UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| PRETTY PRODUCTS, LLC, | : | |
| | : | Case No. 10-12286-whd |
| Debtor | : | |

**EMERGENCY MOTION FOR ORDER (1) AUTHORIZING DEBTOR IN POSSESSION TO OBTAIN FINANCING, GRANT SECURITY INTERESTS, AND ACCORD PRIORITY STATUS PURSUANT TO 11 U.S.C. § 364(c) AND (d); (2) AFFORDING ADEQUATE PROTECTION AND AUTHORIZING USE OF CASH COLLATERAL; (3) GIVING NOTICE OF FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)(2) AND (c)(2); AND (4) MODIFYING AUTOMATIC STAY, AND FOR IMMEDIATE HEARING**

COMES NOW Pretty Products, LLC, debtors and debtors in possession in the above-styled chapter 11 cases (the "Debtor"), and hereby moves the Court, pursuant to Sections 364(c)(1), 364(c)(2) and 364(c)(3) of Title 11, United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order: (i) authorizing the Debtor to obtain from Synovus Bank, formerly known as Columbus Bank and Trust Company ("CB&T" or "Lender") post-petition loans, advances and other credit accommodations in the maximum amount of $500,000.00 outstanding at any one time, subject to the aggregate outstanding principal balance of the entire Credit Line not exceeding the sum of $12,000,000.00, secured by first priority security interests and liens in and to all of the Debtor's now existing and hereafter acquired real property, personal property, and fixtures and the proceeds thereof (except as otherwise set forth herein), (ii) authorizing the Debtor to ratify, adopt and amend the existing Loan Agreement establishing the Credit Line and related agreements, as amended, between the Debtor and CB&T, (iii) approving the terms and conditions of such agreements among the Debtor and CB&T, as ratified, adopted and amended, (iv) modifying the automatic stay consistent with the terms set forth herein, (v) granting CB&T certain liens and super-priority administrative claim status

pursuant to Section 364(c)(1) of the Bankruptcy Code, and (vi) setting a final hearing on the Motion. In support hereof, the Debtor respectfully shows the following:

| | |
|---|---|
| **Borrower:** | Pretty Products, LLC |
| **Prepetition Lender:** | Synovus Bank, formerly known as Columbus Bank and Trust Company ("Lender") |
| **Prepetition Obligations:** | Lender made loans and advances and agreed to provide credit accommodations to the Debtor pursuant to the terms of a certain Loan and Line of Credit Agreement dated June 18, 2008, and related agreements executed and delivered by the Debtor, including, without limitation, the agreements, instruments, and documents set forth in Exhibit "A" to the proposed Order submitted herewith. The approximate balance of all debts is $13,209,000, of which approximately $11,935,000 relates to the Line of Credit (Order, paragraphs C and D; Motion, paragraphs 6 through 9) |
| **Prepetition Collateral:** | Valid and perfected first priority security interests in, and liens upon (except for certain purchase money security interests, equipment leasehold interests, and tax liens), substantially all of the Debtor's property, as more further described Exhibit "B" to the proposed Order submitted herewith (Order, paragraph E; Motion, paragraph 10) |
| **Validity of Debt and Perfection of Security Interests:** | The Debtor stipulates, and the Court orders, that the security interests and liens granted by it to CB&T pursuant to the Financing Agreements are legal, valid, enforceable, duly perfected and first priority security interests in and liens upon the Prepetition Collateral, subject only to the rights of any duly appointed Creditors' Committee for a period of ninety (90) days from its appointment and the rights of any Chapter 11 or Chapter 7 trustee appointed within sixty (60) days of the Petition Date for a period of thirty (30) days from such appointment. (Order, paragraphs F and 9) |
| **DIP Facility:** | Postpetition loans, advances and other credit accommodations in the maximum amount of $500,000.00 outstanding at any one time, subject to the aggregate outstanding principal balance of the entire Credit Line not exceeding the sum of $12,000,000.00, secured by first priority security interests and liens in and to all of the Debtor's now existing and hereafter acquired real property, personal property, and fixtures and the proceeds thereof (Order, paragraph 4, Exhibit C) |
| **Use of Proceeds:** | Prior to the "Termination Date" (as defined in numbered paragraph 26 of the proposed Order submitted herewith), the Debtor will use the proceeds of the post-petition loans and advances made by Lender to the Debtor solely for the payment of those line item expenses, both in nature and amount, set forth in a budget to be approved in advance by Lender (a "Budget"). (Order, paragraph 5) |

| | |
|---|---|
| **Budget:** | Attached as Exhibit "D" to the proposed Order submitted herewith is a proposed Budget setting forth, among other things, Borrowers' forecasted sales, collections, and expenses. |
| **Collateral Security:** | Valid and perfected first priority security interests and liens, superior to all other creditors of the Debtor's bankruptcy estate (except prior liens on the Debtor's property held by other parties, the Carveout (as defined below), and the fees and expenses of the Office of the United States Trustee and fees and expenses of the Clerk of this Court), in and upon all that property described on Exhibit "B" to the proposed Order submitted herewith and in the Security Deed; all claims and property recovered by or on behalf of the Debtor or any trustee of the Debtor (whether in the Debtor's Chapter 11 case or any subsequent Chapter 7 case to which the Debtor's Chapter 11 case is converted); all real property leasehold interests and leases; all books and records relating to all of the foregoing (provided that any Chapter 7 or 11 trustee will be entitled to immediate and unlimited access to such books and records); and all proceeds, products, rents and profits of all of the foregoing, whether cash or non-cash; and all property described as Collateral in the Financing Agreements (collectively, the "Postpetition Collateral" and, together with the Prepetition Collateral, the "Collateral"). The Collateral will not include any property or proceeds recovered by or on behalf of the Debtor or any Chapter 7 or Chapter 11 trustee of the Debtor arising from claims, causes of action or adversary proceedings asserted or commenced pursuant to Chapter 5 of the Bankruptcy Code, including but not limited to Sections 544, 545, 547, 548, 549, 550 or 553 thereof. (Order, paragraph 10) |
| **Carve Out:** | The liens and security interests in favor of DIP Lender will be subject to a Carveout for Professional Fees as estimated in the Budget. The maximum amount of the Carveout is $30,000 during the interim period in the aggregate for all professionals employed by the Debtor or any duly appointed Creditors Committee. (Order, paragraph 24) |
| **Repayment:** | Lender will apply the proceeds received by it from the disposition of Prepetition Collateral first to Prepetition Debt, until such Prepetition Debt is paid and satisfied in full, and then to the Postpetition Debt. Similarly, Lender shall apply the proceeds received by it from the disposition of the Postpetition Collateral first to Postpetition Debt, until such Postpetition Debt is paid and satisfied in full, and then to the Prepetition Debt. In the event that Lender is unable to determine whether proceeds of Collateral constitute proceeds of Prepetition Collateral or Postpetition Collateral, the proceeds shall be applied first to Prepetition Debt and then to Postpetition Debt if the Prepetition Debt is paid and satisfied in full. (Order, paragraph 13) |

**Administrative Priority:** For all of the Post-Petition Debt arising pursuant to the Financing Agreements or otherwise, and in addition to the foregoing, Lender is granted an allowed super priority administrative claim having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor, now in existence or hereafter incurred by the Debtor and over any and all administrative expenses or priority claims of the kind specified in, or granted pursuant to, Sections 326, 330, 331, 503(b), 506(c) or 507(b) of the Bankruptcy Code, in accordance with Section 364(c)(1) of the Bankruptcy Code; provided that, Lender's super priority administrative claim is subject to and subordinate to the "Carveout" (as defined in numbered paragraph 24 below), any prepetition retainer advanced to counsel for the Debtor, the fees and expenses of the office of the United States Trustee, and any fees and expenses of the Clerk of this Court. Furthermore, Lender's super priority administrative claim does not extend to the Chapter 5 Actions and cannot be satisfied or paid from the proceeds thereof. (Order, paragraph 22)

**Documents:** The Debtor will execute, deliver, perform and comply with the terms and covenants of the Amendment attached as <u>Exhibit "C"</u> to the proposed Order submitted herewith pursuant to which the Debtor shall (a) ratify, assume, adopt and amend the Financing Agreements and agree to be bound thereby, and (b) perform and comply with the terms, conditions, and covenants of the Financing Agreements.

**Events of Default:** (a) the failure of the Debtor to perform in any material respect any of its obligations pursuant to this Financing Order, (b) the termination or non-renewal of the Financing Agreements as provided for therein, (c) conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, (d) the appointment of a trustee appointed pursuant to Section 1104(a) of the Bankruptcy Code, (e) dismissal of the Debtor's Chapter 11 case, (f) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating or amending this Financing Order without the express prior written consent of CB&T (and no such consent shall be implied from any other actions, inaction or acquiescence by CB&T), (g) the filing of a plan of reorganization which does not provide for the payment in full of the indebtedness due and owing to CB&T upon confirmation of such plan, or (h) the date of the Final Hearing (as defined herein) (Order, paragraph 26)

**Termination Date:** If there is an Event of Default, then (unless such Event of Default is specifically waived in writing by Lender), three (3) business days after delivery of written notice of such occurrence to the Debtor, counsel for the Debtor and counsel for the Creditors' Committee, which delivery will be deemed effective upon the confirmed facsimile transmission, e-mail transmission, hand delivery, or other mailing of such notice, (1) Lender may, at its election, by written notice to the Debtor, counsel for the Debtor, and counsel for the Creditors' Committee, terminate the Financing Agreements and cease making loans to the Debtor and declare all of the Prepetition Debt and Postpetition Debt owed by the Debtor to Lender immediately due and payable and terminate the Financing Agreements, (2) the automatic stay provided for pursuant to Section 362 of the Bankruptcy Code shall be vacated and Lender will be entitled to the entry of an order

4

vacating or modifying the automatic stay and any other restriction on the enforcement of Lender's liens and security interests or any other rights granted to Lender under the Financing Agreements or pursuant to this Financing Order, and (3) Lender, without further notice, hearing or approval of the Court, will be authorized, in its sole and complete discretion, to take any and all actions and remedies which Lender may deem appropriate to proceed against and realize upon the Collateral and any other property of the Debtor's bankruptcy estate upon which Lender has been or may hereafter be granted liens and security interests to obtain prepayment of the indebtedness owed by the Debtor to Lender. Lender will have no obligation to lend or advance any additional funds to the Debtor after the Termination Date. (Order, paragraphs 26 and 27)

### Jurisdiction

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtor filed a voluntary petition on June 15, 2010 (the "Petition Date").

### Background

3. The Debtor is a manufacturer of floor mats for vehicles with headquarters and a 200,000 square foot manufacturing facility located at 1513 Redding Drive, LaGrange, GA 30240 (the "Facility"). The Facility employs sixteen (16) salaried employees and one-hundred sixteen (116) hourly employees. The real property and improvements on which the Facility is located are owned by Cambridge Real Estate Holdings, LLC ("Cambridge"), which is an affiliated entity.

4. The Debtor produces three primary floor mats lines: all weather, carpet, and rubber composition mats for customers such as Honda, Toyota, and Subaru. The Debtor is actively developing recyclable mats and has developed a passive resistant safety mat that is designed not to slip.

5. Many factors contributed to the Debtor's financial issues. The Debtor previously prepared mats for Chrysler and General Motors, who refused to increase their prices to address the negative margins inherent in the arrangement. Ultimately, both filed bankruptcy at a time when they owed the Debtor over $1.2 million. Additionally, the unusually high gasoline costs in 2007 and 2008 destroyed the company's margins on its profitable products, which combined with the general downturn in the economy, forced the Debtor to shut down its Ohio and Tennessee facilities and consolidate all operations into the Facility. In 2008, the Debtor generated revenues of $50 million. Now that contraction has occurred, revenues are approximately $18-20 million per year.

### The Primary Secured Creditor

6. The Debtor's primary secured lender is Synovus Bank, formerly known as Columbus Bank and Trust Company ("Lender") pursuant to the terms of a certain Loan and Line of Credit Agreement dated June 18, 2008, and related agreements executed and delivered by the Debtor, including, without limitation, the agreements, instruments, and documents set forth in Exhibit "A" to the proposed Order submitted herewith (all of such agreements, security agreements, financing statements and related agreements, documents, notes, instruments and guarantees creating or evidencing indebtedness of the Debtor or granting collateral security of the Debtor in favor of Lender, as the same now exist or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced, being referred to herein collectively as the "Financing Agreements").

7. The Debtor is also indebted to Lender pursuant to a Term Note in the principal amount of $500,000 and a Universal Note and Security Agreement dated December 2, 2008, in the

6

original principal amount of $975,000.000, executed by Borrower in favor of Lender (the "Universal Note").

8. The obligations under the Universal Note are further secured pursuant to that certain Deed to Secure Debt and Security Agreement dated December 2, 2008 (the "Security Deed") through which Cambridge, agreed to grant a security interest in the Facility. Cambridge has guaranteed the payment of the Line of Credit Note, the Term Note, the Universal Note and all other obligations then or thereafter existing owed by the Debtor to Lender.

9. The principal amount of all obligations, liabilities and indebtedness of the Debtor to Lender, both absolute and contingent, existing prior to the commencement of this Chapter 11 case, is approximately $13,209,000, of which approximately $11,935,000 relates to the Line of Credit (together with all interest, fees, commissions, costs and expenses accrued and accruing with respect thereto, the "Prepetition Debt").

10. Pursuant to the Financing Agreements, the Prepetition Debt is secured by valid and perfected first priority security interests in, and liens upon (except for certain purchase money security interests, equipment leasehold interests, and tax liens), all of the Debtor's right, title and interest in and to all that property more particularly described as Exhibit "B" to the proposed Order submitted herewith and by the Security Deed described below (all of the foregoing property, as the same existed on or at any time prior to the Petition Date, together with all cash and non-cash proceeds thereof, being hereinafter referred to as the "Pre-Petition Collateral").

### Request for Approval of DIP Facility

11. An immediate and ongoing need exists for the Debtor to obtain loans and other extensions of credit in order to continue operation of its businesses as debtor in possession under Chapter 11 of the Bankruptcy Code and to minimize the disruption of the Debtor as a "going

7

concern," to preserve the value of the assets. The Debtor is unable to obtain funds in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code.

12. Lender is willing to make such post-petition loans and advances only on a secured basis as more particularly described herein and subject to the terms and conditions contained herein.

13. The Debtor has an immediate need for financing prior to the time scheduled for a final hearing hereon in order to prevent immediate and irreparable harm to the estate. Accordingly, the Debtor requests that, pending a final hearing on this Motion, the Debtor be authorized to obtain loans and other extensions of credit, to be used solely for the purposes and to the extent set forth in the budget attached to the proposed Order submitted herewith as <u>Exhibit "D"</u> to avoid immediate and irreparable harm to the Debtor and to its estate.

**Authority Relating to Cash Collateral and Continued Advances under the Credit Line**

14. As of the Petition Date, funds on deposit constitute cash collateral of the Lender within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral"). Lender has already advance on these receivables. For the same reasons outlined above with respect to the financing by Lender, the Debtor requires the immediate use of the Cash Collateral and authority to obtain continued advances under the Line of Credit.

15. Lender is entitled to adequate protection in connection with the Debtor's use, sale or other disposition of any of the Prepetition Collateral. Accordingly, the Debtor proposes to grant a replacement lien in and to all of the Collateral as partial adequate protection for the use, consumption, sale, collection or other disposition of any Prepetition Collateral in which the

8

Lender has a valid and perfected prepetition security interest or lien, to the extent that such use, consumption, sale, collection or other disposition results in any diminution in the value of such security interest in or lien. Under the current circumstances, the Debtor asserts that the adequate protection provided herein is reasonable and sufficient to protect the interests of Lenders, subject to the rights of the Lender to request further or different adequate protection.

### Request for Immediate Hearing

16. Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2), the Debtor requests the Court to conduct a hearing as soon as possible to avoid immediate and irreparable harm to the estate pending a final hearing.

### Request for Additional Relief

17. The Debtor requests the Court to modify the automatic stay imposed by 11 U.S.C. § 362 in order to permit the implementation of (i) the proposed financing set forth herein, and (ii) any adequate protection provided herein.

18. The financing sought by the Debtor is necessary to minimize the disruption of the Debtor's business and operations as a going concern, to preserve the assets of the Debtor's estate, and is in the best interest of the Debtor, its creditors, and its estate. The terms of the proposed financing are fair and reasonable. The Debtors submit that Lender has acted in good faith, as required by Section 364(e) of the Bankruptcy Code, in connection with the proposed financing.

### Notice

19. The Motion was filed on June 17, 2010, and the Debtor will provide actual notice of the terms of the Motion and the relief requested therein by telecopy, overnight courier, e-mail, or hand delivery to (i) the Office of the United States Trustee, (ii) Lender and its attorneys, (iii) all

creditors known to the Debtor who may have liens against the Debtor's assets, (iv) the United States Internal Revenue Service, (v) the twenty (20) largest unsecured creditors of the Debtor as set forth in the list filed by the Debtor pursuant to Bankruptcy Rule 1007(d); (vi) all landlords, owners, operators and mortgagors of the premises at which a significant amount of inventory of the Debtors is located; and (vii) all parties in interest that have filed a notice of appearance in the Debtor's Chapter 11 case; all as more fully described in the certificate of service filed by counsel for the Debtor. The expedited notice pursuant to Bankruptcy Rule 4001(c) to such parties in interest is necessary to avoid immediate and irreparable harm to the Debtor's bankruptcy estate pending a final hearing for permanent financing.

WHEREFORE, the Debtor respectfully prays that this Motion be granted and that, pursuant hereto, the Debtor be authorized to execute and deliver and to perform all of its obligations hereunder, to obtain loans and other credit extensions pursuant to the terms thereof pending a final hearing, to use cash collateral to avoid immediate and irreparable harm, to grant the liens and adequate protection proposed herein, and to grant such other and further relief as is just and equitable.

This 17th day of June, 2010

LAMBERTH, CIFELLI, STOKES
ELLIS & NASON, P.A.
Attorneys for the Debtors

By: */s/ G. Frank Nason, IV*
G. Frank Nason, IV
Georgia Bar No. 535160

3343 Peachtree Road, NE, Suite 550
Atlanta, Georgia  30326
(404) 262-7373

## CERTIFICATE OF SERVICE

    I, G. Frank Nason, IV, certify that on the date specified below I caused to be served a true and correct copy of the foregoing EMERGENCY MOTION FOR ORDER (1) AUTHORIZING DEBTORS IN POSSESSION TO OBTAIN FINANCING, GRANT SECURITY INTERESTS, AND ACCORD PRIORITY STATUS PURSUANT TO 11 U.S.C. § 364(c)(1) AND (d); (2) AFFORDING ADEQUATE PROTECTION AND AUTHORIZING USE OF CASH COLLATERAL; (3) GIVING NOTICE OF FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)(2) AND (c)(2); AND (4) MODIFYING AUTOMATIC STAY, AND FOR IMMEDIATE HEARING upon the parties listed below via electronic mail. An additional Certificate of Service will be submitted reflecting any additional service parties.

        Jeneane R. Treacee
        362 Richard Russell Building
        75 Spring Street, S.W.
        Atlanta, GA 30303
        jeneane.treace@usdoj.gov

        Eric N. Durlacher
        Burr & Forman, LLP
        171 - 17th Street NW, Suite 1100
        Atlanta, GA 30363
        edurlach@burr.com


This 17th day of June, 2010

                */s/ G. Frank Nason, IV*
                G. Frank Nason, IV